**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PATAGONIA, INC.

        Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

Case No. 19-cv-06711

**COMPLAINT**

Plaintiff Patagonia, Inc. ("Patagonia" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using infringing and counterfeit versions of Patagonia's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using infringing and counterfeit versions of Patagonia's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Patagonia substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Patagonia to combat Internet Store operators who trade upon Patagonia's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel, active wear, and other merchandise using infringing and counterfeit versions of Patagonia's federally registered trademarks (collectively, the "Counterfeit Patagonia Products"). Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Patagonia products, while actually selling Counterfeit Patagonia Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Patagonia is

forced to file these actions to combat Defendants' counterfeiting of its registered Patagonia trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Patagonia Products over the Internet. Patagonia has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Plaintiff Patagonia, Inc. is a corporation organized and existing under the laws of the State of California, having its principal place of business at 259 West Santa Clara Street, Ventura, California 93001.

5.      Patagonia has been designing, developing, and marketing clothing for more than forty years. Today, Patagonia and the PATAGONIA® brand are famous around the world for innovative designs, quality products, and environmental and corporate responsibility.

6.      Yvon Chouinard started Patagonia in the late 1960's to design and sell climbing clothes and other active sportswear. He adopted the "PATAGONIA" trademark to differentiate the business from another family business that designed and manufactured climbing gear and tools. PATAGONIA was chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords, jagged windswept peaks, gauchos and condors. Since at least as early as 1973, the PATAGONIA® brand has appeared on a label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline framed by a stormy sky.

7.      In the more than forty years since Patagonia's business started, PATAGONIA® has become one of the most identifiable brands in the world. Products sold under the PATAGONIA® brand now include men's, women's, and children's apparel and products

designed for climbing, skiing, snowboarding, surfing, fly fishing, and trail running, all of which are sold around the world. Patagonia also sells PATAGONIA® branded gear and backpacks, and food products.

8.      Over the years, Patagonia has earned accolades for every aspect of its business. Its products have won numerous awards for their technical merit, including most recently, Outside Magazine's Gear of the Year every year from 2014 through 2019, the National Geographic Adventure Blog "Gear of the Year" award in 2010, 2013, 2014, 2015 and 2016, and the Editor's Choice and Top Pick awards from OutdoorGearLab. In 2015, Yvon Chouinard, Patagonia's founder, was inducted into the American Marketing Association Marketing Hall of Fame.

9.      Patagonia has also won numerous awards and certifications for its business initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement Award." In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers used in conventional cotton growing, Patagonia began the exclusive use of organically grown cotton and has continued that use for twenty years. Patagonia is also a founding member of the Fair Labor Association, which is an independent multi-stakeholder verification and training organization that audits apparel factories. Additionally, since 1985 Patagonia has pledged 1% of sales to grassroots environmental groups to preserve and restore our natural environment, donating more than $100 million. In 2002, Patagonia's founder Yvon Chouinard, along with others, created a non-profit called 1% For the Planet to encourage other businesses to do the same. Today, more than 1,200 member companies have donated more than $150 million to more than 3,300 nonprofit organizations through 1% For the Planet. In 2016, Patagonia, Inc. pledged to donate all revenue from sales on Black Friday, donating $10 million to environmental

grantees in response to customers' purchases on that day.  In 2018, Patagonia, Inc. pledged an

additional $10 million in grants to environmental groups in response to recent tax cuts given to

businesses.

10.     PATAGONIA® products are distributed and sold to consumers throughout the

United States, including in Illinois, through PATAGONIA® brand stores, including locations in

Chicago's Magnificent Mile and Lincoln Park shopping districts, through the official

patagonia.com website which was launched in 1994 and began selling product through the

ecommerce site in 1996, and through retailers such as REI, Moosejaw, and Dick's Sporting

Goods.

11.     Patagonia incorporates a variety of distinctive marks in the design of its various

PATAGONIA® products.  As a result of its long-standing use, Patagonia owns common law

trademark rights in its trademarks.  Patagonia has also registered its trademarks with the United

States Patent and Trademark Office.  PATAGONIA® products typically include at least one of

Patagonia's registered trademarks.  Often several Patagonia marks are displayed on a single

PATAGONIA® product.  Patagonia uses its trademarks in connection with the marketing of its

PATAGONIA® products, including the following marks which are collectively referred to as the

"PATAGONIA Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 1,189,402 | PATAGONIA | Feb. 9, 1982 | For: Men's and Women's Clothing- Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear in class 025. |
| 2,260,188 | PATAGONIA | July 13, 1999 | For: computerized on-line ordering activities in the field of clothing and accessories in class 035. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | For: providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing information in the field of existing and evolving environmental issues in class 042. |
| 2,662,619 | PATAGONIA | Dec. 17, 2002 | For: Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories in class 035. |
| 1,294,523 |  | Sep. 11, 1984 | For: Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts in class 025. |
| 1,775,623 |  | June 8, 1993 | For: luggage back packs, and all-purpose sports bags in class 018. |
| 2,392,685 | PATAGONIA.COM | Oct. 10, 2000 | For: on-line retail store and mail order services featuring technical clothing, footwear, and accessories in class 035.<br><br>For: computer services in the nature of on-line information related to the environment and clothing in class 042. |
| 4,500,490 |  | Mar. 25, 2014 | For: shirts, pants, shorts in class 025. |
| 4,809,249 | MERINO AIR | Sep. 8, 2015 | For: clothing and garments made in whole or substantial part of merino wool, namely, undergarments; base |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | layer garments, namely, undergarments, underwear, thermal shirts, pants, tops and bottoms, all made in whole or substantial part of merino wool in class 025. |

12.     The above U.S. registrations for the PATAGONIA Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The PATAGONIA Trademarks have been used exclusively and continuously by Patagonia, some since at least as early as 1974, and have never been abandoned.  The registrations for the PATAGONIA Trademarks constitute *prima facie* evidence of their validity and of Patagonia's exclusive right to use the PATAGONIA Trademarks pursuant to 15 U.S.C. § 1057(b).  Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the PATAGONIA Trademarks included in the above table.

13.     The PATAGONIA Trademarks are exclusive to Patagonia, and are displayed extensively on PATAGONIA® products and in Patagonia's marketing and promotional materials.  The PATAGONIA® brand has long been among the most popular active sportswear lines in the world and has been extensively promoted and advertised at great expense.  In fact, Patagonia has expended millions of dollars annually in advertising, promoting and marketing featuring the PATAGONIA Trademarks.  PATAGONIA® products have also been the subject of extensive unsolicited publicity resulting from their high quality and innovative designs.  Because of these and other factors, the PATAGONIA® name and the PATAGONIA Trademarks have become famous throughout the United States.

14.     The PATAGONIA Trademarks are distinctive when applied to the PATAGONIA® products, signifying to the purchaser that the products come from Patagonia and

are manufactured to Patagonia's quality standards. The PATAGONIA Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the PATAGONIA Trademarks is of incalculable and inestimable value to Patagonia.

15. Since at least as early as 1996, Patagonia has operated an e-commerce website where it promotes and sells genuine PATAGONIA® products at patagonia.com. Sales of PATAGONIA® products via the patagonia.com website represent a significant portion of Patagonia's business. The patagonia.com website features proprietary content, images and designs exclusive to Patagonia.

16. Patagonia's innovative marketing and product designs have enabled Patagonia to achieve widespread recognition and fame and have made the PATAGONIA Trademarks some of the most well-known marks in the apparel and active wear industry. The widespread fame, outstanding reputation, and significant goodwill associated with the PATAGONIA® brand have made the PATAGONIA Trademarks valuable assets of Patagonia.

17. Patagonia has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the PATAGONIA Trademarks. As a result, products bearing the PATAGONIA Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Patagonia. Patagonia is a multi-million dollar operation, and PATAGONIA® products have become among the most popular of their kind in the world.

**The Defendants**

18. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants

conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Patagonia Products to consumers within the United States, including the State of Illinois.

19.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using infringing and counterfeit versions of the PATAGONIA Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Patagonia to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Patagonia will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the PATAGONIA® brand has resulted in its significant counterfeiting. Consequently, Patagonia has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Patagonia has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and/or selling Counterfeit Patagonia Products to

consumers in this Judicial District and throughout the United States. Despite Patagonia's

enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. E-

commerce sales, including through Internet stores like those of Defendants, have resulted in a

sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**,

Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual

Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were

smaller international mail and express shipments (as opposed to large shipping containers). *Id*.

Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit

and pirated products account for billions in economic losses, resulting in tens of thousands of

lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

21.     Defendants facilitate sales by designing the Defendant Internet Stores so that they

appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.

Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via

credit cards, Alipay, Amazon Pay, Western Union, and/or PayPal. The Defendant Internet Stores

often include content and design elements that make it very difficult for consumers to distinguish

such counterfeit sites from the official patagonia.com website or another authorized website.

Many Defendants further perpetuate the illusion of legitimacy by offering customer service and

using indicia of authenticity and security that consumers have come to associate with authorized

retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Patagonia has not licensed

or authorized Defendants to use any of the PATAGONIA Trademarks, and none of the

Defendants are authorized retailers of genuine PATAGONIA® products.

22.     Many Defendants also deceive unknowing consumers by using the PATAGONIA

Trademarks without authorization within the content, text, and/or meta tags of their websites in

order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PATAGONIA® products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine PATAGONIA® products. Other Defendants only show the PATAGONIA Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for genuine PATAGONIA® products.

23.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Patagonia Products for sale in the

Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Patagonia Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images.

25.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

26.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Patagonia's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this

Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

27.     Defendants, without any authorization or license from Patagonia, have knowingly and willfully used and continue to use the PATAGONIA Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Patagonia Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Patagonia Products into the United States, including Illinois.

28.     Defendants' use of the PATAGONIA Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Patagonia Products, including the sale of Counterfeit Patagonia Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Patagonia.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29.     Patagonia hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28.

30.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered PATAGONIA Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The PATAGONIA Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from PATAGONIA® products sold or marketed under the PATAGONIA Trademarks.

13

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the PATAGONIA Trademarks without Patagonia's permission.

32. Patagonia is the exclusive owner of the PATAGONIA Trademarks. Patagonia's United States Registrations for the PATAGONIA Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Patagonia's rights in the PATAGONIA Trademarks, and are willfully infringing and intentionally using counterfeits of the PATAGONIA Trademarks. Defendants' willful, intentional and unauthorized use of the PATAGONIA Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Patagonia Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Patagonia has no adequate remedy at law, and if Defendants' actions are not enjoined, Patagonia will continue to suffer irreparable harm to its reputation and the goodwill of its well-known PATAGONIA Trademarks.

35. The injuries and damages sustained by Patagonia have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Patagonia Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Patagonia hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Patagonia Products has created and is creating a likelihood of confusion, mistake, and deception

among the general public as to the affiliation, connection, or association with Patagonia or the origin, sponsorship, or approval of Defendants' Counterfeit Patagonia Products by Patagonia. By using the PATAGONIA Trademarks in connection with the sale of Counterfeit Patagonia Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Patagonia Products.

38.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Patagonia Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39.     Patagonia has no adequate remedy at law and, if Defendants' actions are not enjoined, Patagonia will continue to suffer irreparable harm to its reputation and the goodwill of its Patagonia brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

40.     Patagonia hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

41.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Patagonia Products as those of Patagonia, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine PATAGONIA® products, representing that their products have Patagonia's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

15

42.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

43.     Patagonia has no adequate remedy at law, and Defendants' conduct has caused Patagonia to suffer damage to its reputation and associated goodwill.  Unless enjoined by the Court, Patagonia will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Patagonia prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the PATAGONIA Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Patagonia product or is not authorized by Patagonia to be sold in connection with the PATAGONIA Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Patagonia product or any other product produced by Patagonia, that is not Patagonia's or not produced under the authorization, control, or supervision of Patagonia and approved by Patagonia for sale under the PATAGONIA Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Patagonia Products are those sold under the authorization, control or

16

supervision of Patagonia, or are sponsored by, approved by, or otherwise connected with Patagonia;

d. further infringing the PATAGONIA Trademarks and damaging Patagonia's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Patagonia, nor authorized by Patagonia to be sold or offered for sale, and which bear any of Patagonia's trademarks, including the PATAGONIA Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, at Patagonia's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Patagonia, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Patagonia's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Patagonia's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Patagonia's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms

such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

   a.  disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the PATAGONIA Trademarks;

   b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the PATAGONIA Trademarks; and

   c.  take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4)  That Defendants account for and pay to Patagonia all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the PATAGONIA Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5)  In the alternative, that Patagonia be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PATAGONIA Trademarks;

6)  That Patagonia be awarded its reasonable attorneys' fees and costs; and

7)  Award any and all other relief that this Court deems just and proper.

Dated this 10th day of October 2019.       Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiff Patagonia, Inc.*